UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GERARD RIEGER,** | Civ. No. 2:23-03714 (WJM) |
| Plaintiff, | |
| | **OPINION** |
| v. | |
| **RELIANCE STANDARD LIFE INSURANCE COMPANY, JOHN DOES 1-10, JOHN DOES CORPORATIONS 1-10.** | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This is an action governed by Employee Retirement Income Security Act of 1974, as amended ("ERISA") to recover long term disability benefits under a policy issued by Defendant Reliance Standard Life Insurance ("Defendant" or "Reliance"). Plaintiff Gerard Rieger ("Plaintiff") and Reliance each move for summary judgment pursuant to Fed. R. Civ. P. 56. ECF Nos. 22, 23. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, Plaintiff's motion for summary judgement is **denied**. Defendants' motion for summary judgment is **granted**.

I.  BACKGROUND

A. Disability Policy

Effective June 1, 1994, Reliance provided group long-term disability insurance to employees of Allergan, Inc. ("Allergan") under Policy Number LSC 100,002 and Participating Unit Number LTD126589 (the "Policy"). Administration Record ("AR")1-2 attached to Certif. of Peter A. Wujciak, Jr. as Ex. A; ECF Nos. 22-2, 22-8, 22-9, 22-10. The pertinent terms of the Policy are:

"Totally Disabled" and "Total Disability" mean, that as a result of an Injury or Sickness:

> (1) during the Elimination Period and for the first 24 months for which a Monthly Benefit is payable, an Insured cannot perform the material duties of his/her Regular Occupation;[1]
> (a) "Partially Disabled" and "Partial Disability" mean that as a result of an Injury or Sickness an Insured is capable of performing the material duties of his/her Regular Occupation on a part-time basis or some of the material duties on a full-time basis. An Insured who is Partially Disabled will be considered Totally Disabled, except during the Elimination Period;
> (b) "Residual Disability" means being Partially Disabled during the Elimination Period. Residual Disability will be considered Total Disability

AR10 (footnote added). Reliance "will pay a Monthly Benefit if an Insured: (1) is Totally Disabled as the result of a Sickness or Injury covered by this Policy; (2) is under the regular care of a Physician; (3) has completed the Elimination Period; and (4) *submits satisfactory proof of Total Disability to us*." AR19 (emphasis added). Under the Policy, "the Monthly Benefit will stop on the earliest of: (1) the date the Insured ceases to be Totally Disabled; … or (4) the date the Insured fails to furnish the required proof of Total Disability." AR20. Reliance has the "discretionary authority to interpret the Plan" and "to determine eligibility for benefits." AR15.

### B. Facts

Allergan hired Plaintiff on or about January 3, 2017 as an Associate Director in the Information and Technology Group on a full-time basis. AR45. Plaintiff's last day of active work was September 29, 2020. AR482. From September 30, 2020 until on or around March 28, 2021, Plaintiff was on leave and received short-term disability insurance benefits. *Id.* Reliance was given notice of Plaintiff's claim on March 15, 2021. AR482.

Plaintiff's neurologist, Dr. Anna Iones, wrote in her September 10, 2020 progress notes that Plaintiff's MRI brain was unremarkable, other systems were negative, and that Plaintiff has had a history of migraines since age 7 including complaints of "constant, daily" severe migraines with photo/phonophobia, sensitivity to smells, nausea, occasional vomiting, and pains in "bilateral occipital regions, radiating up, which respond to occipital nerve blocks though temporarily." AR398. Notes of Plaintiff's examinations with Dr. Iones on October 19, 2020, November 2, 2020, November 16, 2020, as well as subsequent examinations through February 2022 contain the same chief complaints and assessments with some variation in treatments and medications. *See e.g.,* AR401-403, 404-406, 407-409. On February 12, 2021, Dr. Iones deemed Plaintiff unable to return to work and would

---

[1] The Elimination Period is 180 consecutive days of Total Disability. AR7. "Regular Occupation" is "the occupation the Insured is routinely performing when Total Disability begins. We will look at the Insured's occupation as it is normally performed in the national economy, and not the unique duties performed for a specific employer or in a specific locale." AR9.

2

re-evaluate in 2 months. AR423. On May 14, 2021, Dr. Iones excused Plaintiff until September 1, 2021. AR427.

Plaintiff's pain management physician, Dr. Philip Rubinfeld, examined Plaintiff on September 14, 2020, October 12, 2020, November 9, 2020, December 7, 2020, January 4, 2021, February 1, 2021, and March 1, 2021 and at each visit, wrote: "[] Improvements: physically functioning; able to maintain relationships, mood unaffected; sleep patterns undisturbed; overall function improved." AR391, 387, 238, 378, 373, 368, 363. Dr. Rubinfeld also stated that Plaintiff reported no loss of consciousness, weakness, numbness, seizures, dizziness, tremor, gait dysfunction, paralysis, nausea, vomiting, muscle aches or weakness, back or neck pain, sleep disturbances, or anxiety, and that Plaintiff's medication was "medically necessary to control pain and improve patient's functions and which make it possible for patient to perform activities of daily living." AR391-92, 387-388, 238-239, 378-379, 373-374, 368-369, 364. Dr. Rubinfeld, on several occasions temporarily extended Plaintiff's return to work date. *See e.g.,* AR286 (on 10/19/20 permitting return to work on 10/20/20), AR227 (on 10/23/20 permitting return to work on 10/26/20), AR230 (on 10/29/20 permitting return to work on 11/2/20), AR233 (on 11/4/20 permitting return to work on 11/16/20), AR243 (on 11/24/20 permitting return to work on 12/14/20).

On May 24, 2021, Reliance's clinical staff reviewed Plaintiff's medical records of his visits with Dr. Iones from December 7, 2020 to January 19, 2021 for "migraines and occipital neuralgia" for which he received Botox injections every three months, occipital nerve blocks, and monthly Ajovy injections. AR81. Staff noted that as of October 12, 2020, Plaintiff reported migraine "unstable stuck in migraine cycle for 2 weeks, and nausea and vomiting unstable which increases with increasing pain." *Id.*; *see* AR388. In addition, based on "[s]erial neurology (Iones) records to 05-14-2021" documenting "severe" migraines and an inability "to return to work" as well as "[s]erial pain management records 09-04-2020 to 03-01-2021" for chronic low back pain and "neck pain migraine," clinical staff determined: "claimant lacks work function ongoing due to persistent migraines with nausea, phono and photophobia. Suggest obtaining updated neurology and pain management, and headache records in 12 weeks from most recent medical record when improvement may be obtained." *Id.*

By letter dated May 25, 2021, Plaintiff was informed that because he appeared to have met the group policy's definition of Total Disability and satisfied the Elimination Period on March 29, 2021, his claim for Long Term Disability benefits was approved for March 29, 2021 to May 29, 2021. AR192. Future monthly benefits would be paid for 24 months if he remained "Totally Disabled as defined by the group policy" and that to be eligible beyond 24 months (March 29, 2023), he "must be totally disabled from performing the material duties of Any Occupation. Any Occupation is one that the Insured's education, training or experience will reasonably allow." *Id.* The letter also stated that an investigation would begin prior to March 29, 2023 "in order to gather the necessary information to determine" continued eligibility for LTD benefits. *Id.*

3

Progress notes from Plaintiff's visit with Dr. Iones on August 31, 2021 indicate that "[t]here was trouble with botox coverage, and since he [Plaintiff] did not find it helpful, he did not want to pursue further. He does not find Ajovy helpful either." AR432. Dr. Iones concluded that Plaintiff "can not return to work – he should be excused for next 3 months; we will reconvene in 3 months to assess his response to Nurtec." AR433.

Plaintiff ceased to be an employee of Allergan on September 20, 2021. *See* Separation Agreement and Release, AR482-493. Reliance continued to monitor Plaintiff's condition and on October 8, 2021 concluded that "lack of work function is supported ongoing due to ongoing treatment of migraines without improvement or stabilization with most recent medication adjustment occurring on 08/31/21." AR82. While noting Nurtec medication was consistently filled every month, clinical staff questioned what Oxycodone was prescribed to treat and suggested contacting claimant in early February 2022 for discussion of treatment and return to work plan, among other things. AR82.

At Plaintiff's October 21, 2021 visit with Dr. Iones, Plaintiff complained of "more than 15 migraine days per month, lasting more than 4 hrs." AR502. Plaintiff tried Nurtec "as preventive and did not tolerate due to GI SE" and that because his migraines worsened since stopping Botox, he wanted to restart. AR501, 502.

Plaintiff next saw Dr. Iones on February 15, 2022 and was given a Botox injection. AR498-500. At that exam, Plaintiff expressed interest in trying medical marijuana. AR499.

On March 29, 2022, Reliance's clinical staff observed Dr. Iones's progress notes "do not document migraine frequency over the prior 3 mo." AR83. Clinical staff highlighted that there was "a gap in treatment from 10/21/21 to return on 02/15/22" and again questioned the frequency of Dr. Rubinfeld's monthly Oxycodone prescription from January 21, 2020 to August 16, 2021 given that Tylenol in Oxycodone "can cause and/or contribute to rebound migraine headaches." *Id.* Based on available medical records and the "decrease in treatment frequency," clinical staff concluded that migraine frequency appeared to have "stabilized with return to prior to DOL baseline" stating:

> [a]lthough claimant reports inability to return to work with Neurology MD completing disability forms, objective clinical examination does not support migraines at a level of severity to prevent or impair consistent light work function. Claimant has long term history of migraines from the age of 7 & was previously capable of working with diagnosis prior to DOL. Records are negative of urgent or emergent migraine treatment from at least 05/2021 forward & note a normal physical examination, negative for driving restrictions or impaired activities of daily living.

*Id.*

Accordingly, by letter dated April 4, 2022, Reliance informed Plaintiff that he did not satisfy the definition of Total Disability and thus was no longer entitled to LTD benefits beyond February 28, 2022. AR209-211. The letter set forth the Policy definition of Total

4

Disability and explained that clinical medical staff had reviewed Plaintiff's file including information provided by Dr. Iones dated to February 15, 2022. Summarizing, Reliance wrote that on October 21, 2021, Dr. Iones noted that brain MRI and other findings were unremarkable and recommended restarting Botox; on February 15, 2022, Dr. Iones administered Botox injections for migraine prevention and referred Plaintiff to other physicians to discuss trying medical marijuana. Thus, clinical staff opined that Plaintiff's "migraine frequency has stabilized with return to [] baseline prior to [his] date of disability. The records demonstrate a decrease in treatment frequency" and that the "medical supports a capability of light work function, with restrictions of inability to work from heights and climbing ladders[.]" AR210. The letter instructed Plaintiff that any written request for review should state any reasons why the determination is incorrect including any "written comments, documents, records, or other information relating to" his claim for benefits that he would like Reliance to consider. AR211.

On June 17, 2022, Reliance received and reviewed medical records from Dr. John Freiheiter, Plaintiff's primary care physician, for the period of April 2021 to April 2022. *See* AR215. Reliance's July 6, 2022 "medical- pre appeal" notes show a review of records from Dr. Freiheiter regarding a Covid-19 diagnosis in late December 2021 and a March 2022 visit to Morristown Medical Center for an MRI of the cervical spine. AR83. Clinical staff again concluded that "there was no clinical documentation that supports a severity of symptoms to preclude work function. There is no change to the decision rendered by the previous nurse review. Claimant would be capable of light work function." *Id.*

By letter dated July 5, 2022, Plaintiff appealed stating only that his "health situation has not improved" and that he had not "returned to baseline." AR602. Reliance's Appeals Department conducted another review of the claim file, which included requesting Dr. Freiheiter's medical records starting from April 21, 2022 and Dr. Iones's records starting from February 15, 2022. *See* AR215. Progress notes of Plaintiff's April 21, 2022 visit with Dr. Freiheiter lists Plaintiff's "chief complaint" as follow up of "chronic neck pain" and that his visit was for "recurring migraines." AR750. Dr. Freiheiter wrote that Plaintiff was "healthy-appearing" and in "[no acute distress]." AR751. There is no mention in the notes regarding disability or inability to work or any assessment/plan as to the migraines. Reliance also received Dr. Freiheiter office visit notes from May 23, 2022, June 20, 2022, July 15, 2022, July 18, 2022, lab work dated June 13, 2022, and Dr. Iones's March 25, 2022 office visit note. *See* AR215.

As part of the independent review of the claim on appeal, Reliance engaged Dr. Joseph T. Palermo, Board Certified in Internal Medicine, and Dr. Sherry Leitch, a Board Certified in Neurology, to provide opinions regarding any restrictions that Plaintiff may have. Dr. Palermo's findings, as set forth in his August 26, 2022 letter, are based on review of medical records from Drs. Iones, Rubinfeld, and Freiheiter ranging from September 10, 2021 to July 18, 2022. AR637-639. Dr. Palermo noted that none of the examinations by any of those physicians documented any physical functional impairment or suggested any restrictions and that Dr. Iones appeared to manage Plaintiff's migraines with Botox.

AR637. Dr. Rubinfeld diagnosed the migraines as unspecified and not intractable and several times, authorized Plaintiff to return to work full-time without restrictions. AR638. Additionally, Dr. Palermo contacted Dr. Freiheiter who described Plaintiff's migraines as "significant," but deferred to the neurologist as the primary manager of Plaintiff's migraine condition. AR639. Dr. Feiheiter explained that the "lack of discussion in his progress notes about the claimant's prior job or medical necessity for ongoing restrictions" was because he has "a busy primary care practice" with no "time to address disability on each visit." AR639-640. Dr. Palermo concluded that the migraines did not preclude "work capacity on a full-time consistent basis as of 2/28/22 and ongoing." AR641.

Dr. Leitch's August 29, 2022 letter shows review of the same medical records of Dr. Iones, Dr. Rubinfeld, and Dr. Freiheiter. AR631-633. Furthermore, Dr. Leitch spoke with Dr. Iones, who confirmed that Plaintiff is "miserable with headache" and is unable to work due to headache pain. AR633. Despite Plaintiff's long history of migraine complaints, Dr. Leitch observed that no abnormalities were shown in the March 22, 2022 brain MRI or the neurologic examination, and that "the medical data does not substantiate the presence of ongoing abnormalities from February 28, 2022, forward that would result in restrictions and limitations." AR634. In sum, Dr. Leitch concluded that Plaintiff "has work capacity on a full time consistent basis as of February 28, 2022, and ongoing." AR635.

On September 12, 2022, Dr. Rubinfeld sent a letter to Reliance that concluded, without any explanation, that Plaintiff "is currently unable to work in any capacity due to chronic migraine headaches and severe intractable neck pain." AR665. Drs. Palermo and Leitch reviewed the letter but it did not alter their prior opinion that Plaintiff's records did not "show any clinical abnormalities" that would prevent job duties. AR216.

Reliance denied Plaintiff's appeal on September 27, 2022, explaining the appeals review process and concluding that benefits were terminated as of February 28, 2022 because "objective clinical examination does not support migraines at a level of severity to prevent or impair consistent light work function" and that it was "unclear why [Plaintiff was] unable to return to [his] previous level of exertion." AR215. In sum, Reliance determined that "the severity specific to [Plaintiff's] condition(s) did not preclude full-time work function and render [him] unable to work as of February 28, 2022." *Id.*

C.   Procedural History

Plaintiff initially filed his complaint in state court on June 6, 2023. Defendant removed this action to federal court on July 11, 2023. Count One seeks long term disability benefits under ERISA. In Count Two, Plaintiff alleges breach of the convent of good faith and fair dealing. Count Three asserts breach of fiduciary duty and breach of contract. Each side moves for summary judgment.[2]

---

[2] If summary judgment is denied, "employees who sue[] under ERISA to receive benefits under an applicable plan [are] not entitled to a jury trial under section 502(a)(1)(B)." *Cox v. Keystone Carbon Co.*, 894 F.2d 647, 649 (3d Cir. 1990); *see Alexander v. Primerica Holdings, Inc.*, 819 F. Supp. 1296, 1305 (D.N.J. 1993) ("the [Third] Circuit has

## II. DISCUSSION

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." "A fact is 'material' . . . if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes*, 795 F.3d 410, 416 (3d Cir. 2015) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "A dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Auth. of New York & New Jersey*, 593 F.3d 265, 268 (3d Cir. 2010). The Court's role at the summary judgment stage "is 'not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Baloga v. Pittston Area Sch. Dist.*, 927 F.3d 742, 752 (3d Cir. 2019) (quoting *Anderson*, 477 U.S. at 249).

The party moving for summary judgment bears the initial burden of showing the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to "come forward with specific facts showing that there is a *genuine issue for trial* and do more than simply show that there is some metaphysical doubt as to the material facts." *United States v. Donovan*, 661 F.3d 174, 185 (3d Cir. 2011) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)) (emphasis in original and internal quotation marks omitted). "[U]nsupported assertions, speculation, or conclusory allegations" are insufficient to defeat a summary judgment motion. *Longstreet v. Holy Spirit Hosp.*, 67 F. App'x 123, 126 (3d. Cir. 2003). "[T]here must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson*, 477 U.S. at 252.

The Court considers each party's motion for summary judgment against the statutory framework of ERISA. *See Hooven v. Exxon Mobil Corp.*, 465 F.3d 566, 572–73 (3d Cir. 2006) ("every claim for relief involving an ERISA plan must be analyzed within the framework of ERISA").

---

expressly determined that, for each of these sections, [§§ 502(a)(1)(B), 502(a)(2), 502(a)(3)(A), and 502(a)(3)(B)] no right to a trial by jury exists").

### B. Standard of Review Under ERISA

"Section 502(a)(1)(B) of ERISA allows a participant to bring a claim to recover benefits due to him under the terms of the plan." *Miller v. Am. Airlines, Inc.*, 632 F.3d 837, 845 (3d Cir. 2011) (citing 29 U.S.C. § 1132(a)(1)(B)). Courts customarily review an ERISA benefits decision de novo. *Firestone Tire & Rubber v. Bruch*, 489 U.S. 101, 111 (1989). Where, as here, the benefit plan grants discretionary authority to the plan administrator in determining eligibility benefits covered by ERISA, the denial of such benefits is reviewed under an arbitrary and capricious standard. *Id.* at 115; *see Miller*, 632 F.3d at 845 n.2 (noting that in context of ERISA, arbitrary and capricious standard of review is essentially identical to abuse of discretion standard). Even if the administrator is responsible both for determining eligibility for benefits and for paying any benefits owed as is the case here, the conflict of interest does not change the review from deferential to *de novo* and is only one of several factors among many "in considering whether the administrator or the fiduciary abused its discretion." *Miller*, 632 F.3d at 845, n.3 (discussing *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008) and *Estate of Schwing v. The Lilly Health Plan*, 562 F.3d 522, 525 (3d Cir. 2008)).

"An administrator's decision is arbitrary and capricious 'if it is without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Miller*, 632 F.3d at 845 (citing *Abnathya v. Hoffmann–La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir.1993) (quotations and citations omitted)). Under this narrow scope of review, "'the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits.'" *Becknell v. Severance Pay Plan of Johnson & Johnson & U.S. Affiliated Companies*, 644 F. App'x 205, 210 (3d Cir. 2016) (citing *Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233–34 (3d Cir. 2009)). "When reviewing an administrator's factual determinations," the Court can "consider only the 'evidence that was before the administrator when he made the decision being reviewed.'" *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 121 (3d Cir. 2012) (citing *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997), *abrogated on other grounds as stated in Miller v. Am. Airlines, Inc.* 632 F.3d 837, 847 (3d Cir. 2011)).

### C. Disability Determination

#### 1. Change in Determination of Benefits

Plaintiff does not dispute that he bears the burden to prove disability nor does he argue that benefits once awarded must continue in perpetuity. *See* AR20 (Monthly Benefit will stop on the "date the Insured fails to furnish the required proof of Total Disability"); *see also* AR192 (Plaintiff can expect monthly future benefits "provided that you remain Totally Disabled as defined by the group policy"). *See Reed v. CITIGROUP INC.*, 658 F. App'x 112, 117 (3d Cir. 2016) (recognizing that initial benefit payment "does not operate as an estoppel such that [it] can never terminate benefits." (citing *Miller*, 632 F.3d at 849)). Instead, Plaintiff posits that Defendant's denial of disability benefits was arbitrary and

capricious because Reliance's decision in the prior year that Plaintiff did meet the Policy's definition of Total Disability was based on the exact same proofs. *See e.g., Miller*, 632 F.3d at 849 (deciding reversal of administrator's decision absent meaningful evidence supports arbitrary and capricious finding)). The record does not support Plaintiff's position.

While much of Dr. Iones's notes of Plaintiff's medical history contain the same or similar history of self-reported "constant, daily" migraines along with a unremarkable brain MRI and "other systems," Reliance does not challenge Plaintiff's *diagnoses* of migraines. Rather, Reliance contends Plaintiff failed to satisfy his burden of providing "satisfactory proof of Total Disability" from his regular occupation and emphasizes that neither a diagnosis nor an *initial* disability award is proof of an ongoing Total Disability. *See Matteo v. Reliance Standard Life Ins. Co.*, No. 18-11450, 2022 WL 819600, at *11 (D.N.J. Mar. 17, 2022), *appeal dismissed*, No. 22-1681, 2022 WL 10447745 (3d Cir. Aug. 15, 2022) ("it is well-settled that 'diagnoses alone do not establish disability.'" (citing *Krash v. Reliance Standard Life Ins. Co.*, 248 F. Supp. 3d 600, 615 (M.D. Pa. 2017)). At the time of the initial disability award in May 2021, Plaintiff had monthly or bi-monthly neurology and pain management exams, which included reports of being "unstable stuck in migraine cycle for 2 weeks, and nausea and vomiting unstable which increases with increasing pain," as well as determination of an inability to return to work. Thus, Reliance clinical staff determined that Plaintiff "appears [to] lack[] work function." AR81. On August 31, 2021, Dr. Iones again opined that Plaintiff could not return to work and excused him for the next 3 months. AR433. On October 21, 2021, Plaintiff complained of "more than 15 migraine days per month, lasting more than 4 hrs." AR502. On February 15, 2022, Plaintiff was given a Botox injection because his migraines worsened since stopping Botox. AR498-500. Progress notes from that visit does not otherwise mention frequency of migraines.

To explain the gap in treatment between October 21, 2021 and February 15, 2022, Plaintiff posits that the reduction in frequency of treatment was due to difficulty in paying for treatment because his monthly benefits were reduced from $7,744.07 to $2,715.00; however, the gap occurred *before* monthly benefits were reduced on February 23, 2022. *See* Pl. Stmt. Of Material Facts, at ¶ 19. Moreover, Dr. Iones's August 31, 2021 progress notes indicate an issue with insurance coverage only as to Botox rather than to frequency of treatment. Any insurance coverage issue notwithstanding, at Plaintiff's October 21, 2021 examination, Plaintiff expressed wanting to restart Botox due to worsening migraines, but did not receive those injections until nearly 4 months later on February 15, 2022.

Finally, Plaintiff insists that his prognosis was worse in February 2022 than in March 2021 because he no longer responded favorably to certain medications and sought out medical marijuana. The Court cannot conclude Reliance's decision to deny benefits despite those facts was an abuse of discretion given that progress notes from subsequent exams on March 25, 2022 by Dr. Iones and on April 21, 2022 by Dr. Freiheiter do not document any increased migraine severity resulting in inability to return to work. Although Dr. Rubinfeld's exam notes from April 25, 2022 indicate that Plaintiff was to be prescribed

9

a "long acting opioid since he is waking up in the middle of the night from headaches," in that same visit, Plaintiff reported "no sleep disturbances," and Dr. Rubinfeld continued to find, as he had during previous exams from September 2020 to March 2021, that "sleep patterns [were] undisturbed," "overall function [was] improved," and medication made "it possible for patient to perform activities of daily living." AR744-745.

In sum, the proofs upon which Reliance initially approved disability benefits are not the same a year later when benefits were terminated. There are no genuine issues of material fact that support Plaintiff's position that the proofs were exactly the same. Under the arbitrary and capricious standard of review, Reliance's decision to deny benefits is not without reason. There is sufficient evidence for a reasonable person to agree that Plaintiff did not meet his burden to show that as of February 28, 2022, the severity of migraines impaired his ability to work.

### 2. *Differing Opinions*

To the extent that the independent physicians, Drs. Palermo and Dr. Leitch, disagreed with the opinions of Drs. Iones and Rubinfeld, "'plan administrators are not obliged to defer to the treating physician's opinion.'" *Ackaway v. Aetna Life Ins. Co.*, 802 F. App'x 77, 80 (3d Cir. 2020) (citing *Stratton v. E.I. DuPont De Nemours & Co.*, 363 F.3d 250, 258 (3d Cir. 2004)). "A professional disagreement does not amount to an arbitrary refusal to credit." *Stratton*, 363 F.3d at 258. Here, Drs. Palermo and Leitch reviewed Plaintiff's prior medical records and spoke with Drs. Iones and Rubinfeld before reaching their respective conclusions. That the response of both doctors use similar wording and include Plaintiff's age is not a basis to discount or disregard their opinions. Moreover, although Plaintiff insists that Defendants fail to cite evidence indicating that Plaintiff could return to work, *see* Pl. Br. at 14, "[i]t is not Defendants' burden to determine the existence of Plaintiff's disability; it is enough that they determine, reasonably, that Plaintiff has failed to satisfy his burden of proof." *Zurawel v. Long Term Disability Income Plan for Choices Eligible Emples. of Johnson & Johnson*, No. 07–5973, 2010 WL 3862543 (D.N.J. Sept. 27, 2010). Dr. Rubinfeld's September 12, 2022 letter to Reliance contains no explanation for his single sentence conclusion that Plaintiff "is currently unable to work in any capacity due to chronic migraine headaches and severe intractable neck pain." AR665. Additionally, while Dr. Iones noted on September 8, 2022 that Plaintiff reported that his headaches were worsening due to his father's passing, AR662, Plaintiff's disability benefits were denied based on his ability to return to work as of February 28, 2022.

Next, to discredit the reports of the independent medical examiners, Plaintiff suggests that Defendant denied his disability benefits because he was no longer an employee of Allergan after the Separation "Agreement was signed on February 29, 2022." Pl.'s Opp'n Br. at 10. Plaintiff describes it as "mindboggling" that Drs. Palermo and Leitch assessed Plaintiff's ability to work as of February 28, 2022 (which Plaintiff describes as "the day immediately preceding Plaintiff's signing of the Agreement") and that Reliance's clinical staff conducted a review of Plaintiff's medical records one year and one month

after the "signing of the Agreement." There is no merit to Plaintiff's theories of suspicious timing. First, the Agreement was signed on October 19, 2021, not February 29, 2022. Second, even if the Agreement had been signed on February 29, 2022, there is nothing suspect about Reliance reviewing its claims, which Reliance advised Plaintiff it would do. *See* AR192. Third, Drs. Palermo and Leitch issued their respective conclusions as to Plaintiff's ability to work after February 28, 2022 because Reliance asked both doctors to opine on "work capacity on a full-time consistent basis as of 2/28/22 and ongoing." AR641. Plaintiff's claim that Reliance cut benefits because Plaintiff was no longer employed by Allergan lacks any factual support and is therefore merely conjecture. There is no genuine issue of material fact upon which a reasonable juror could find that Reliance's decision to credit the reports of Drs. Palermo and Leitch over Plaintiff's treating physicians was arbitrary and capricious.

### 3. *Objective Proof*

Because the plain language of the Policy requires "satisfactory" proof of Total Disability, Plaintiff asserts that Reliance's requirement of "objective clinical" proof was arbitrary and capricious. *See* Def. Summary Judgment Mem. at 15. However, because Reliance has discretionary authority to interpret the Plan, interpreting "satisfactory" proof to include "objective" medical evidence" is not unreasonable. *See Connor v. Sedgwick Claims Mgmt. Servs., Inc.*, 796 F. Supp. 2d 568, 588 (D.N.J. 2011) (agreeing with other courts in this district that requiring objective evidence is not arbitrary and capricious even where plan did not require proof of disability with objective evidence); *Pokol v. E.I. du Pont de Nemours & Co.*, 963 F. Supp. 1361, 1372 (D.N.J. 1997) (same).

Next, Plaintiff contends that because there is no objective imaging for chronic migraines, requiring objective evidence is arbitrary and capricious. *Ackaway v. Aetna Life Ins. Co.*, No. 14-1300, 2016 WL 5661724, at *24 (E.D. Pa. Sept. 30, 2016) ("Courts have determined that a plan or claims administrator commits an abuse of discretion if it requires objective medical evidence to show fatigue (or another subjective condition)."), *aff'd*, 802 F. App'x 77 (3d Cir. 2020). In response, Reliance correctly draws a distinction between a demand for objective proof of an inherently subjective condition and a demand for objective proof of functional impairment resulting from that condition. *See Matteo*, 2022 WL 819600, at *11 (noting that courts within Third Circuit have held that it is not abuse of discretion to require objective evidence that subjective condition is sufficiently disabling to warrant award of disability benefits (internal quotes and citation omitted), *appeal dismissed*, No. 22-1681, 2022 WL 10447745 (3d Cir. Aug. 15, 2022). Plaintiff erroneously maintains that Defendant "continuously referred to Plaintiff's 'unremarkable MRI' as evidence that there is no 'clinical documentation that supports a severity of symptoms to preclude work function.'" Pl. Br. at 15 (citing AR83). However, Reliance's March 29, 2022 clinical staff note does not rely on Plaintiff's unremarkable MRI and instead explains that "records are negative of urgent or emergent migraine treatment from at least 05/2021 forward" in concluding that "objective clinical examination" did not "support migraines at

11

a level of severity to prevent or impair consistent light work function. AR83. In denying disability benefits, Reliance did not require objective proof of the undisputed migraines, but rather, reviewed additional medical records as well as the opinions of two independent physicians and found that "objective clinical examination does not support migraines at a level of severity to prevent or impair consistent light work function." AR215; *see* AR83. Requiring objective evidence of work impairment was not arbitrary and capricious.

### 4. *ERISA Notice Requirement*

Finally, Plaintiff maintains that Defendant failed to comply with 29 C.F.R. § 2560.503-1(g)(iii), which states: "A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary." Such "regulations ensure that claimants have the ability to 'understand' and 'challenge' an administrator's decision." *Morningred v. Delta Fam.-Care & Survivorship Plan*, 526 F. App'x 217, 220 (3d Cir. 2013) (citing *Miller*, 632 F.3d at 852). "'[N]oncompliance' with ERISA's notice requirements 'weighs in favor of finding that decision was arbitrary and capricious.'" *Id.* (citing *Miller*, 632 F.3d at 852–53).

The April 4, 2022 denial of benefits letter from Reliance quotes the Policy provision that monthly benefits would terminate once the insured fails to furnish "the required proof of Total Disability," and clearly states why Plaintiff no longer met the definition of Total Disability under the Policy. Contrary to Plaintiff's contention that Reliance improperly required evidence to support "disability of Chronic Migraines," Pl. Br. at 16, Reliance's letter acknowledges Plaintiff's migraines and expressly states that its conclusion as to work function rested on the *frequency* of Plaintiff's migraine as demonstrated by the decrease in treatment frequency. AR2010.

Defendant advised Plaintiff of his right to appeal and that a request for appeal "should state any reasons why you feel this determination is incorrect," including "any written comments, documents, records, or other information relating to your claim for benefits" that he would like Reliance to consider. AR211. Defendant's denial letter described what was necessary for Plaintiff to challenge Reliance's decision on appeal. *See e.g., Matteo*, 2022 WL 819600, at *12-13; *Quinlan v. Reliance Standard Life Ins. Co.*, No. 13-7052, 2015 WL 519430, at *10 (D.N.J. Feb. 9, 2015) (same). However, the proofs submitted by Plaintiff following his appeal, such as Dr. Rubinfeld's September 12, 2022 letter, were insufficient to show a functional inability to work. *See* discussion *supra*.

### III. CONCLUSION

For the reasons noted above, Plaintiff's motion for summary judgement is **denied**. Defendants' motion for summary judgment is **granted**.

WILLIAM J. MARTINI, U.S.D.J.

Dated: November 4, 2024